CHARLES F. EISELEY, APPELLANT, V. NORFOLK NATIONAL
BANK ET AL., APPELLLEES.

FILED MAY 23, 1911. No. 16,419.

1. **Attachment:** RATIFICATION BY DEBTOR. Where a defendant in attachment does not in such action assail the validity of the attachment, or the truthfulness of the affidavit upon which it is based, but within a few days after the levy of such attachment voluntarily executes and delivers to the attachment creditor, or to the attorneys of such creditor for his benefit, a bill of sale of all of the attached goods and chattels, subject to certain other indebtedness of and judgments against such attachment debtor, he thereby ratifies and confirms such attachment, and cannot thereafter proceed against the judgment creditor or the surety upon the attachment bond for damages claimed to have been sustained by reason of an alleged unlawful and fraudulent procurement and levy of such attachment.

2. ———: DIRECTING VERDICT. Evidence examined and referred to in the opinion *held* sufficient to sustain the action of the trial court in directing a verdict for the defendant, and sufficient to sustain the judgment entered thereon.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*W. V. Allen* and *W. L. Dowling,* for appellant.

*M. D. Tyler, contra.*

FAWCETT, J.

Plaintiff brought suit in the district court for Madison county against the Norfolk National Bank and the defendant Rainbolt to recover damages for an alleged wrongful attachment levied upon plaintiff's stock of hardware in the city of Norfolk, the bank being the plaintiff in such attachment suit, and defendant Rainbolt surety upon the attachment bond. The case was subsequently dismissed as to the bank, and the trial proceeded against defendant Rainbolt individually. After both sides had

rested, defendant moved for a directed verdict in his favor. The motion was sustained, and from a judgment entered upon the verdict so returned plaintiff appeals.

The pleadings, the evidence, the assignments of error, and the briefs in this court are all unnecessararily voluminous and will not be referred to in detail. As we view the record, after a very careful examination of the same, the real questions involved are quite simple. The record shows that for a number of years prior to September 25, 1896, plaintiff had been engaged in the hardware business in the city of Norfolk. According to his own testimony, plaintiff's business for the two years immediately prior to said date had not been as profitable as in previous years, and, notwitstanding the fact that plaintiff had reduced his stock $1,000 during the two years prior to the date named, he had not been able to promptly meet his liabilities. During the last three months of 1895 at least three of plaintiff's creditors had reduced their claims to judgments against him in the county court of Madison county. The answer of defendant sets out these judgments. The return of the sheriff upon the attachment sued out by the bank shows that the attachment was levied September 26, subject to a prior levy on the day preceding under executions upon four judgments, viz., the three judgments set out in the answer, and one in favor of George Bishop for $142. At the time of levying the executions above referred to, on September 25, 1896, possession of the stock was taken by the sheriff. On the next morning, September 26, the bank obtained a writ of attachment and placed the same in the hands of the sheriff, who at once levied the same, subject to his levy under the four executions set out in his return. Plaintiff testified that the attachment was procured without his knowledge and in the face of an assurance given by him on the evening of the 25th, after the executions had been levied, that he would pay the bank's claim of $1,500 and accrued interest on the next morning. Upon the trial plaintiff introduced as a witness Mr. W. H.

Bucholz, who at the time the attachment was levied was cashier of the bank, but who now has no connection therewith. He testified that on the evening before the attachment was issued, and after the executions had been levied, he called upon plaintiff at plaintiff's residence, and had a general talk with him about his affairs generally; that in that conversation they discussed plaintiff's financial situation, "trying to find some way by which we could save part of the stock that was being threatened, the stock of goods, and apply the proceeds on his home, the mortgage upon his home, in order to save the home for Mr. Eiseley." He further testified: "I urged him, if he was going to have trouble, to give the bank a preference lien on that $1,500, and have that secured by the stock in addition to what we already had, and he said he couldn't do that because he had promised Mr. Mann, he had given his word he would not give anybody any security on that stock that night or that day. Then I proposed that we talk over the attachment, and he said that could be done without his violating his word; to go ahead." Notwithstanding Mr. Bucholz had been introduced as a witness by plaintiff and his veracity thereby vouched for, plaintiff was subsequently permitted to contradict this testimony given by him. We do not think that under the evidence appearing in this record any weight can be given to this attempted contradiction by plaintiff of a reputable witness whom he had himself placed upon the stand. As has been said, the attachment was levied on the morning of September 26. Two days later, on September 28, plaintiff and the firm of Powers & Hays, attorneys representing both the judgment creditors and the attaching creditor, took the matter up in the office of the attorneys, and as a result of that interview plaintiff executed and delivered to Powers & Hays a bill of sale of all of the personal property which had been levied upon under the executions and attachment, subject to an account of $200 and interest to the I. L. Elwood Manufacturing Company; a judgment of $111.90, with interest and costs, in favor of the C. Sydney

Shepherd Company; a judgment of $309.81, with interest and costs, in favor of the Michigan Stove Company; a judgment of $109.40, with interest and costs, in favor of the Northfield Knife Company (the three judgments set out in defendant's answer); and a note (upon which the attachment was based) in favor of the Norfolk National Bank for the sum of $1,831.25, and the interest accrued and to accrue thereon. When this bill of sale was executed and delivered to the attorneys, the levies under the executions and attachment were all released, and Powers & Hays took possession of the stock of hardware under the bill of sale. In something less than two months thereafter, the sheriff levied upon this stock, then in the hands of Powers & Hays, under a tax distress warrant against the plaintiff, covering taxes from 1891 to 1896, aggregating about $490, took possession of the stock under such levy and sold the same.

On November 13, 1897, plaintiff commenced an action in the district court for Madison county against the bank and Powers & Hays and the sheriff, Joseph J. Clements, to recover the value of the stock of hardware in controversy, on the ground that said defendants had converted the same to their own use. The petition in that case set out the execution and delivery of the bill of sale above referred to, and the taking possession of the stock thereunder by Powers & Hays. That case proceeded to trial, and resulted in a judgment in favor of defendants therein, the Norfolk National Bank and Powers & Hays, and against Sheriff Clements for the full value of the stock, which judgment Mr. Clements paid in full.

On September 28, 1898, plaintiff filed in the United States district court for the district of Nebraska a voluntary petition in bankruptcy. In that case he scheduled a large amount of liabilities, and no assets except $100 of exempt property consisting of "necessary household and kitchen furniture." He was duly adjudged a bankrupt and in due course obtained his discharge.

The above facts are, with the exception of the claim

that the attachment was levied with the prior consent of
plaintiff, either admitted or indisputably established.
Plaintiff claims that the affidavit, upon which the at-
tachment was issued, was false, and that in obtaining
such attachment the bank "acted unlawfully, wilfully,
wrongfully, and maliciously and without probable cause,
whereby the plaintiff sustained damages in the sum of
$3,025"; that by reason of said attachment plaintiff's
stock of hardware, which he alleges was of the then fair
cash value of $3,000, was entirely lost; that plaintiff's
business as a retail hardware merchant, which he alleges
was then of the actual and fair value of $2,500 per an-
num, was totally destroyed and rendered valueless; that
plaintiff's store building in which said stock was kept
was locked up by the sheriff under said writ of attach-
ment, and occupied by the bank with said stock for the
period of two months, whereby plaintiff lost the rent of
said building for that time, of the reasonable and fair
value of $60; that the bank through its officers, agents
and attorneys, while the stock was being held under said
writ, removed from said stock $200 worth which has
never been accounted for; that, while the stock was in the
custody of the sheriff under said writ of attachment, the
bank wrongfully, unlawfully and wilfully permitted the
sheriff to levy a tax distress warrant on a part of the
same for $234.63, personal taxes due from the plaintiff
to the county, the money to pay which plaintiff had given
the said bank under its promise that it would pay said
taxes. The evidence indisputably shows that the last item
referred to had been given to the bank to pay the taxes
upon certain real estate of the plaintiff, and that the same
had all been paid by the bank and the surplus of $4 or
$5 placed to plaintiff's credit upon his open account.
The goods claimed to have been removed from the stock
were not removed during the time the sheriff was in pos-
session under the writ of attachment, but consist of an
amount of less than $200, received from the sale of a
portion of the goods by Powers & Hays, after they had

taken possession of the stock under their bill of sale. The item of $60 for rent is equally without merit, as the total time that the sheriff was in possession, under both the executions and writ of attachment, was only three days. During all of the rest of the time the possession of the store building was by Powers & Hays under the bill of sale which had been voluntarily given them by plaintiff. The item for the value of the stock taken was fully adjudicated and a full and complete recovery therefor had by plaintiff in the litigation above referred to, which resulted in the judgment against the sheriff, and which was fully paid.

This leaves the only item for consideration plaintiff's claim for the destruction of his business, which, as plaintiff states in his brief, is "the gist of the damage claimed in this action." We are unable to discover any ground upon which this claim can be sustained. The bank did not close or stop the running of plaintiff's business. That was effectually done on the previous day by the possession taken by the sheriff under his executions. In addition thereto, we think that the action of the sheriff in levying the executions and of the bank in suing out and levying its writ of attachment were all acquiesced in and ratified by the voluntary bill of sale given by plaintiff two days later to Powers & Hays for the very purpose of enabling them to dispose of the stock and settle the claims of the judgment and attachment creditors, and in consideration for which bill of sale the levies of the executions and attachments were all released. If the attachment had been issued "unlawfully, wilfully, wrongfully, and maliciously and without probable cause," and was based upon a false affidavit, plaintiff could have had those matters determined in that action, and, if his allegations are true, could have fixed the liability of the bank, and of defendant Rainbolt as surety upon the attachment bond. He did not see fit to pursue that course, but, instead, voluntarily sold and assigned all of his right, title and interest in the goods attached to the attorneys of the attaching

creditor for the benefit of the latter, and thus obtained the discharge of the attachment. We do not think such a course of procedure can be held to lay a foundation for an action for damages against the attaching creditor or upon the attachment bond for a wrongful levy of such attachment. The attachment was levied September 26, 1896. It was discharged, as the result of plaintiff's voluntary act, September 28, 1896. This action was not instituted until September 24, 1906. We are unwilling to give our approval to such a course of procedure. We do not find anything in the record to indicate that the bank was attempting to obtain any undue advantage of the plaintiff, but, on the contrary, it appears to have been his friend to the extent of standing by him for nearly a year after he had suffered judgments to go against him, and, when it resorted to attachment, as shown by the testimony of Mr. Bucholz, it did so in an attempt to aid rather than to further embarrass him.

It would serve no good purpose to review any of the other questions discussed in briefs of counsel. We have examined all of the assignments of error as to the rulings upon the pleadings and in the admission and exclusion of evidence, and find no prejudicial error in any of them. The court may have erred in its rulings as to the effect of the bankruptcy proceedings, but it is immaterial to discuss that point, for the reason that, in the conclusion reached, we have proceeded upon the theory (without actually deciding the point) that plaintiff was right in that contention, and that the bankruptcy proceedings did not divest him of his claim, if any he had, by reason of the suing out of the attachment by the bank. Under the undisputed evidence, there was no question of fact for the jury to determine; hence, the trial court did right in directing a verdict for the defendant.

The judgment of the district court is therefore

AFFIRMED.

BARNES, J., took no part in the decision.

LETTON, J., concurs in the conclusion.