MAX MOSHER, APPELLANT, V. HERMAN BESELIN ET AL., AP-
PELLEES.

FILED JULY 19, 1935.   No. 29322.

*Foster & Yates*, for appellant.

*Webb, Sheehan & Kelley, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER,
JJ., and MESSMORE and RYAN, District Judges.

MESSMORE, District Judge.

This is an appeal from the district court for Douglas
county, wherein that court dismissed the case and dis-
charged the jury at the conclusion of appellant's testi-
mony.

The action is one for malicious attachment.   Only the
evidence necessary for a determination of the case will be
set forth in this opinion.   Appellant was a resident of
Omaha for a number of years, was engaged in the cigar
business there and had transacted business with the ap-
pellees Beselin for some years.   He had entered into a
written agreement on or about December 26, 1931, with
one C. W. Detrick, a purchaser furnished by an agent of

appellant, to sell to him the cigar store for the sum of $1,000 down and the balance to be carried back on the stock. The purchaser, Detrick, being unable to raise $1,000, entered into another agreement, verbal in its nature, with appellant for the purchase of said store, agreeing to give appellant three shares of building and loan stock as a first payment, appellant to depreciate the stock and take out a radio. This deal was to be consummated on January 2, 1932. On this same day appellees Beselin, being creditors of appellant, filed an action in attachment in the municipal court of Omaha, with appellee Jamieson as their bondsman, against appellant.

The affidavit in attachment sets out that defendant, appellant herein, is about to remove his property, or a part thereof, out of the county with intent to defraud his creditors; is about to convert his property, or a part thereof, into money for the purpose of placing it beyond the reach of his creditors; has property or rights in action which he conceals; has assigned, removed or disposed of, or is about to dispose of his property, or a part thereof, with intent to defraud his creditors; fraudulently contracted the debt, or incurred the obligation for which suit is about to be or has been brought.

Appellant declares the affidavit in attachment and the garnishment of the purchaser, Detrick, by appellees Beselin to be false, that the same were made maliciously by said appellees for the purpose of injuring and damaging appellant and to put him out of business.

After being served with process in the attachment action, appellant consulted an attorney whom, appellant claims, he employed only to sell the store. The attorney, after consultation with appellant, told him that under the circumstances he could get $500 from the proceeds of the sale of the store for appellant's exemption and he thought that would be about the best he could get and to take that and let it go. This conversation took place about January 4, 1932. The following questions and answers are set out in the bill of exceptions and are contained in the direct

examination of appellant: "Was that in reference to the sale of your store? A. Yes; he told me I couldn't do nothing. He says, 'You had better take this $500 and get out of it.' I was willing to do that because I was surrounded with so much—(interrupted). * * * Q. On the 6th did you sign a bill of sale? A. Yes; I went up there— he called me and says, 'Come on up here,' but I was so disgusted that I turned the key over to Mr. Detrick before I ever got any money out of the place. I was willing to let it go if I didn't get a nickel out of it, to get out of the mess. * * * Q. After you signed the bill of sale, then what happened? A. I come back and he took out what he wanted out of there first, and what was left he gave me and I paid off some small bills to different parties that I owed, and it took all I had, what I got out of it." This evidence, in substance, sets out the relation of the attorney with his client, the appellant. The bill of sale was signed by appellant, the store sold to Detrick, and out of the proceeds thereof $500 paid to appellant in the nature of an exemption, which he accepted.

The attachment action was dismissed on or about January 7, 1932, in the municipal court by the appellees Beselin. About February 17, 1932, a release was filed in said attachment action, waiving all claim for damages by appellant as against the appellees Beselin, signed by the attorney employed by appellant to sell the store.

In *Parmer v. Keith,* 16 Neb. 91, in paragraph 2 of the syllabus, it was held: "To maintain an action for malicious attachment there must be a want of probable cause, malice of the defendant, and injury to the plaintiff." Further, quoting from the opinion in said case, it was held: "Three things are necessary to be alleged and proved, viz., want of probable cause, malice in the defendant, and damage to the plaintiff."

Appellant signed the bill of sale, a legal transfer of the property to the purchaser, disposing of his rights in the property then under attachment, and the attachment action was dismissed. In directing his attorney to sell the store

and in advising with his attorney, there was only one thing that the attorney could do in behalf of his client, the appellant, and that was, if appellant wanted his exemption, wanted to dispose of his interest in the property and desired to sell the store, claiming the sum of $500 exempt to him, then naturally the attachment action would have to be dismissed in performance of the ordinary duties of an attorney in securing the rights of his client that his client had agreed to accept.

We do not believe that the scope of an attorney's authority can be narrowed to the point suggested in appellant's brief. In that behalf we believe that the general authority and duty of an attorney under the circumstances may be summarized as follows: "But where an attorney is called on to perform specific services, and does not identify himself with the record of the cause, and performs only the particular services which he has been retained to perform, his implied authority to bind his client seems limited to the proper conduct of the specific work entrusted to him." 2 R. C. L. 976, sec. 54. In order that appellant could obtain the exemption, it would be necessary to dispose of the attachment suit and not litigate it; the implied authority existed in his attorney for that purpose.

Assuming that appellant's attorney did not have the authority, as contended by appellant, yet appellant accepted and retained the fruits of the allegedly unauthorized act of his attorney. "An unauthorized compromise by an attorney may be ratified by the client, and such ratification may be either express or implied from circumstances, as by the client's acceptance of the fruits of the compromise, with knowledge thereof." 2 R. C. L. 998, sec. 78.

If the attachment issued out of the municipal court had been issued unlawfully, wilfully, wrongfully and maliciously, and without probable cause, and was based upon a false affidavit, the appellant could have had those matters determined in that action, and if the allegations were true could have fixed the liability of the appellees Beselin and

of the surety on the attachment bond. He did not see fit to pursue that course, but instead voluntarily sold and assigned all his right, title and interest in the goods attached for the benefit of the original purchaser, Detrick, and for the benefit of his creditors, and thus obtained a dismissal of the attachment action. By such a course of procedure, no action can be maintained for damages for a malicious attachment against the attaching creditor or the surety on the attachment bond for the wrongful levy of such attachment. *Eiseley v. Norfolk Nat. Bank,* 89 Neb. 382.

This would leave only for consideration the question of damages for the destruction of appellant's business and loss of credit. We do not believe the record reflects any damages to appellant in this respect for the reasons given in this opinion.

A consideration of the waiver of damages filed by appellant's attorney on February 17, 1932, in the original attachment action is not necessary to a determination of this case.

The action of the lower court in dismissing the action and discharging the jury should be and is

AFFIRMED.